SMITH vs. THE STATE.

*March 10 — March 24, 1881.*

CRIMINAL LAW AND PRACTICE. *(1) Evidence in prosecution for rape. (2) Form of entry of verdict of guilty. (3) Recording verdict before discharge of jury. (4, 5) Right of accused to have his counsel notified of rendition of verdict.*

1. In a prosecution for rape, the principal witness having stated on cross examination that one · B. had told her he thought it was the accused who committed the act, there was no error in permitting her then to testify, for the state, that she had described to B. the man who did the act, before B. told her he thought it was the accused.

2. The form of the written verdict herein — " The jury impaneled in the case of the state of Wisconsin against Robert Smith find a verdict of guilty " — and the form of the entry thereof in the clerk's minute book (for which see the opinion), are *held* sufficient. R. S., sec. 742.

3. No entry or record of the verdict in a criminal action need be made before the discharge of the jury, except that in the minute book.

4. Under the constitution of this state, which provides that "in all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel " (art. I., sec. 7), if the accused has employed counsel or has had counsel assigned to him, he has a right to have such counsel present during all the proceedings in the court; and if the verdict is rendered at a time when the court is not in regular session, unless the counsel has stated that he does not desire to be present, or has absented himself from the place of trial in such a way that he cannot be notified without unreasonably delaying the proceedings, or the accused, having his attention called to the matter, expressly waives the presence and assistance of such counsel, it is the duty of the court to see that the counsel is notified that the jury are about to render their verdict.

5. In this case, after the jury had retired, defendant's counsel remained in the court room until a late hour at night, and then went to his office, a short distance from the court room, and went to bed; the jury came in before seven o'clock the next morning, with their verdict, which was received by the court, and the jury discharged without having been polled; and defendant's counsel was not notified, the sheriff's proposal to notify him being disregarded by the judge; and he did not know that a verdict had been rendered until the opening of the court at 9 o'clock A. M., when it was too late to poll the jury as then demanded by him. *Held*, that it was error to refuse defendant's motion for a new trial on that ground.

ERROR to the Circuit Court for *Dunn* County.

For the plaintiff in error there was a brief by *Ives & Mathews*, and oral argument by *Mr. Ives.*

*The Attorney General*, for the state.

TAYLOR, J.  The plaintiff in error was tried and convicted upon an information charging him with rape.  After verdict, and before judgment, the plaintiff in error moved the court to set aside the verdict and grant a new trial upon the following grounds: Upon the exception taken to the introduction of evidence; that the verdict is against the evidence; that the defendant's counsel had not been given an opportunity to be present at the coming in of the jury and delivery of the verdict; and that the jury had been discharged before the rendering of the verdict.  Upon this motion the defendant submitted

Smith vs. The State.

the affidavits of his attorneys, showing that they desired to be present at the time of the rendition of the verdict; that the jury retired to consider upon their verdict at about 9 o'clock in the evening, and thereupon the court adjourned until 9 o'clock the next morning; that defendant's counsel remained in the court room until about 11 o'clock in the evening, and, the jury having failed to agree at that time, the defendant's counsel retired to his office, a short distance from the court house, and went to bed; that between 6 and 7 o'clock in the morning the jury came in with their verdict, which was received by the court, and the jury discharged; that no notice was given to the attorneys for the defendant that the jury had agreed, or had brought in their verdict, at or before the time said verdict was received by the court and the jury discharged; and that they did not learn that any verdict had been rendered until the opening of the court at 9 o'clock in the morning. The defendant also submitted the affidavit of the deputy sheriff in attendance upon the court, showing that he made no attempt to notify the counsel of the coming in of the jury in said action, and was told by the honorable circuit judge presiding at such trial, before the coming in of the jury, that on their coming in he need not notify the defendant's counsel. The record further shows that when the jury came in to render their verdict, the under-sheriff asked the judge if he should go for the defendant's counsel, and the judge replied, " No; it is not necessary." The motion to set aside the verdict and grant a new trial was denied, and defendant excepted, and final judgment and sentence were pronounced against the defendant. The record also shows that upon the opening of the court, at 9 o'clock in the morning, the defendant's counsel appeared and demanded to have the jury polled, which was refused by the court.

In this court the counsel for the plaintiff in error assigns for error the same reasons assigned upon his motion to set aside the verdict.

The exception to the evidence, we think, was properly over-ruled. The defendant had asked the principal witness whether any one had told her that it was Robert Smith who did it, and in reply to that question she answered that Mr. Brehmer told her he thought it was Robert Smith; and upon her re-examination she was asked whether she had told Brehmer about this matter before he said he thought it was Robert Smith who did it. To this inquiry the defendant's counsel objected, but the court permitted her to answer, and she testified: "I had said something to Mr. Brehmer about this matter. I had described to him the man before he told me he thought it was Robert Smith." This reply, we think, was properly received as evidence. She had been asked by the counsel for the defendant if she had been told by any one that the guilty person was the defendant, and she had replied that Brehmer had said he thought it was the defendant. This evidence was clearly drawn out by the defendant for the purpose of raising an inference that she was testifying as to the identity of the accused upon the strength of Brehmer's opinion. It was, we think, competent in reply to show that Brehmer had not expressed any opinion until after he had heard a description of the offender given by the witness. The witness was not allowed to state what she said to Brehmer, or to state to the jury how she had described the offender, but simply in general terms to state that she had described the offender to Brehmer before he gave his opinion. To that extent we think the evidence was competent to rebut the inference sought to be drawn from the reply drawn out by the questions of the defendant's counsel.

We see no objection to the form of the verdict, nor to the manner of its reception or entry. The entries of the clerk of the court in his "minute book" as to the reception of the verdict are as follows:

"Upon the jury coming in, and after they were called by the clerk and answered, the defendant being in court, the court

asked the jury if they had agreed upon their verdict. The foreman answered, 'We have,' and handed a written verdict to the court, whereupon the court said, 'Gentlemen, you say you find the defendant guilty; so say you all?' The jury answered, 'Yes.' The court then read the written verdict, and the jury all answered, 'Yes.' The following verdict was received and filed: 'The jury impaneled in the case of the *State of Wisconsin* against *Robert Smith* find a verdict of guilty.                    JONATHAN STODDARD, Chairman.'"

These entries sufficiently show that the jury in that action returned a verdict of guilty against the defendant, and also show a sufficient recording and entry thereof. Subd. 4, sec. 742, R. S. We think the entry of the verdict in the minute book kept by the clerk is the only entry and record thereof which need be made in any case before the discharge of the jury. 3 Wait's Practice, 194. If it be necessary to enter the verdict in the criminal record, such entry can be made after the jury is discharged. It is clear that the entries need not be made in the court record in the first instance, from the fact that the statute provides that the entries in the record shall refer, when necessary, to the volume and page of the minute book where the minutes had of the proceedings in every case can be found.

The learned counsel for the plaintiff in error insist that the court committed an error in refusing to set aside the verdict on the ground that the counsel for defendant were not present when the verdict was received, and were not notified to be present, but, on the contrary, the court instructed the sheriff's officer, who was in attendance and could readily have notified counsel, that it was unnecessary to do so. The record, we think, shows that the defendant's counsel were not voluntarily absent when the verdict was received, and also that they were desirous of being present at that time. The counsel who tried the case remained at the court-house several hours after the jury had retired, and until a late hour at night, waiting for the

jury to return their verdict.   He then went to his office, near by, and went to sleep.   The verdict was received .early in the morning, and before the court was opened.   In such case we think the counsel had the right to expect he would be notified that the jury were ready to return their verdict, if the same was rendered before the meeting of the court in the morning, and that it would be unjust to hold that, by his retiring from the court-house at a late hour of night, he had waived his right to be present when the verdict was received during the recess of the court.   If, by the absence of the defendant's counsel at the time of receiving the verdict, the defendant lost any right which might have been beneficial to him, then we think it was error not to grant a new trial for that reason.   It is insisted that he lost the right to poll the jury.   If he did, then he lost a right which was very important to him.   That a defendant, in either a civil or criminal action, has the right to poll the jury, is well settled; and a refusal to permit him to do so is error, for which the verdict will be set aside. *Webster v. McKinster*, 1 Pin., 644; *State v. Austin*, 6 Wis., 205; *Rothbauer v. State*, 22 Wis., 468; *Labar v. Koplin*, 4 N. Y., 547. .

We are of the opinion that the court may fairly infer that the defendant lost this right of polling the jury by the absence of his counsel.   It is not to be presumed that the defendant was so familiar with the forms of legal proceedings as to know that he had the right to poll the jury, and that, knowing his right, he voluntarily waived it; nor is it reasonable to presume that he voluntarily waived the right to have his counsel present at so important a proceeding on his trial as the delivery and reception of the verdict.   The constitution of the state, art. I, sec. 7, provides that "in all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel."   This provision gives the defendant the right to be heard by his counsel throughout the whole trial; and, when a defendant in a criminal action has employed counsel, or counsel has

been assigned to him, such counsel has the right to be present during all the proceedings; and we think it is the duty of the court to see that such counsel is notified of the fact that the jury are about to render their verdict, when such verdict is rendered at a time when the court is not in session, unless the counsel has stated that he did not desire to be present, or has absented himself from the place of trial so that he could not be notified without unreasonably delaying the proceedings of the court. *Martin v. State*, 51 Ga., 567; *People v. Trim*, 37 Cal., 274; *Barrett v. State*, 1 Wis., 175. In the two cases first cited, the court held that it was error to take any step in the action in the absense of the counsel for the defendant; and in the Georgia case, the court held that no step could be taken in a criminal case unless the defendant had counsel present, and that if the counsel who had appeared in the case should voluntarily be absent, the court should appoint another to protect his rights. This decision, however, was based upon a provision of the constitution of that state which reads as follows: "Every person charged with an offense against the law shall have the privilege and benefit of counsel." The court seemed to be of the opinion that it was the duty of the court, under that provision, to see that the defendant was at all times furnished with counsel.

Our constitution secures to the accused simply "the right to be heard by himself and counsel," and under that provision it is clearly competent for the accused to appear in person without counsel if he so determines, or to waive his right to have the assistance of his counsel in any stage of the prosecution. But we think when he has employed counsel, or when counsel has been assigned to defend him, he should not be held to have waived his presence and assistance at any stage of the proceedings unless his attention is called to the matter and he expressly waives such assistance. The constitution of California provides that the "accused shall be allowed to appear and defend in person and with counsel, as in civil actions."

Article I, sec. 8, Const. Cal. In *People v. Trim, supra,* the supreme court did not pass upon the right secured to the defendant under this provision of the constitution, but based its decision upon section 408 of the criminal practice act, which expressly provided that if the jury returned into court for further instructions after the case had been submitted to them, the judge should, before giving further instructions, notify the counsel of the defendant so that he might be present. This case is not a direct authority, therefore, upon the question raised in this case. The question was raised in the case of *Barrett v. State,* 1 Wis., 175, but the court did not pass upon it, for the reason that the record did not show affirmatively that the counsel for the defendant was not notified. The learned justice who delivered the opinion says in conclusion: " The parties being present or notified so that they had an opportunity of attending, every purpose of justice and safety is answered." Construing the language of the learned justice, when he speaks of parties, as including their counsel, we fully concur with his opinion as expressed in that case.

It seems to us that where a defendant in a criminal action has retained counsel to defend him, the presence of such counsel at the time any important proceeding is taken in the case is much more important than the presence of the party himself. The very object of employing counsel is that the defendant may have some one to protect his rights who has more knowledge of the law, and of legal proceedings, than the accused himself; and he is therefore entitled to have such counsel present to protect his rights at every stage of the case, unless he expressly waives such presence and protection. In this case no presumption arises on the facts stated, that the accused did not desire the presence of his counsel at the time the verdict was received, or that he waived his right to have him present; and, as the verdict was received at a time when the court was not in regular session, it should not have been received until the counsel for the defendant had been notified

of the fact, so that he might have attended. The defendant having, by his absence, lost the right to poll the jury,—we say lost the right, because we do not think it should be presumed that the accused knew he had that right, and voluntarily relinquished it,—for this reason the judgment must be reversed. It was too late to poll the jury after they had been discharged and had separated.

We are not prepared to say that there is not sufficient evidence to sustain the verdict. Though the record does not make a strong case in favor of the state, yet, the circuit judge having refused to grant a new trial upon that ground, we would not feel justified in reversing his determination upon that point.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Dunn county, who will hold him in custody until he shall be discharged, or his custody changed, by due course of law.