Michael HEADEN, Appellant,

v.

UNITED STATES, Appellee.

No. 10215.

District of Columbia Court of Appeals.

Argued Oct. 12, 1976.

Decided May 10, 1977.

Surell Brady, Public Defender Service, Washington, D. C., with whom Frederick H. Weisberg, Public Defender Service, Washington, D. C., was on the brief, for appellant.

Sallie H. Helm, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN and HARRIS, Associate Judges, and REILLY, Chief Judge, Retired.

KERN, Associate Judge:

Appellant was convicted after trial by jury of burglary in the second degree in violation of D.C.Code 1973, § 22–1801(b).

---

4. We note that defense counsel referred to the Wilbur shooting in her closing argument to the jury.

The government presented the testimony of three witnesses at trial which commenced in the afternoon of the first day and concluded with a guilty verdict around noon on the second.

Officer Parrucci testified that while on duty in his scout car in the early morning hours, he received a radio run to proceed to a nearby grocery store because a silent burglar alarm there had been activated.[1] He arrived on the scene within one minute and saw appellant inside the store handling some sort of cash box located to the right of the counter. Officer Spinner testified that he arrived on the scene after Officer Parrucci and observed appellant try to exit through a side door. He arrested appellant and discovered two screwdrivers and a knife sharpener on his person. Both officers testified that appellant was arrested outside the store. Mr. Baker, the owner of the store, testified that he arrived on the scene in response to the silent alarm and found the side door open and part of the door frame broken. He further testified that a box containing some $60 worth of coins and weighing about 15 pounds had been moved from where he had left it when closing earlier in the evening.

The defense presented a single witness, an investigator from the Public Defender Service, who testified that in an interview before the trial, Officer Parrucci stated that the cash box was to the left of the counter and that appellant was arrested inside the store. The jury, after being instructed, took less than 40 minutes to render its verdict of guilty as charged.

Appellant in his appeal relies upon two procedural aberrations during the trial which he asserts require reversal and a new trial. First, he points to the fact that his trial counsel was absent when the verdict was rendered and the jury polled, thereby depriving him of his constitutional right to counsel at a critical stage of his trial.[2] Second, he notes that although the trial court agreed to give the jury the standard charge that no adverse inference may be drawn from the defendant's failure to take the stand,[3] this instruction, apparently by oversight, was omitted. Appellant argues that the omission, although not objected to at the conclusion of the charge, constituted reversible error.

▇▇▇ We have no hesitation in concluding that the Sixth Amendment affords a defendant the right to the assistance of counsel at that point in a criminal prosecution when the jury renders its verdict. *United States v. Smith,* 411 F.2d 733, 736 (6th Cir. 1969); *Thomas v. Hunter,* 153 F.2d

---

1. The alarm was activated by any disturbance of the doors or windows of the store and alerted the owner, the owner's mother and the nearest police station.

2. Counsel had been instructed either to remain in the courtroom after the jury had retired or else leave a telephone number where they could be reached so as to be able to return within five minutes of being called. The court advised that under any circumstances counsel were to be back at 1 p. m. when he would recess the jury for lunch if it had not reached a verdict. The jury returned at 12:30 p. m. with a verdict and defense counsel entered the courtroom very shortly after 12:40 p. m., at which time the court explained "I waited for you, but I didn't want to hold that jury any longer." Counsel replied "I understand, Your Honor" and explained his delay, "Unfortunately, it involved Judge ____, Mr. ____ [a lawyer] and, Mr. ____ [a lawyer]." The judge then responded "I can understand what was going on then. . . . . I explained to your client that

you were tied up, so hopefully he will understand."

The parties disagree whether counsel could be said to have voluntarily absented himself from the proceedings. But whatever sanctions may be imposed on any attorney who voluntarily fails to appear in court as scheduled, they do not include penalizing the defendant by requiring him to proceed unassisted against the government. Rather, the relevant issue is whether appellant waived his Sixth Amendment right, a position the government could not support on the record in this case. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Tollett v. United States,* 444 F.2d 622 (8th Cir. 1971).

3. The instruction, from the so-called "Red Book" reads: "Every defendant in a criminal case has the absolute right not to testify. You must not draw any inference of guilt against the defendant because he did not testify." Instruction 2.26, Criminal Jury Instructions for the District of Columbia (2nd ed., D.C. Bar Association, 1972).

834, 839 (10th Cir. 1946); *cf. Hockaday v. United States*, D.C.App., 359 A.2d 146 (1976) (defense counsel must be present at sentencing); *United States v. McCoy*, 139 U.S.App.D.C. 60, 429 F.2d 739 (1970) (defense counsel must be present when trial judge interviews juror after the verdict). In our view, the court, while commendably concerned about inconvenience to the jury by keeping it waiting for counsel's return to the courtroom, erred in proceeding to take the verdict without appellant's trial counsel. Absent a knowing and intelligent waiver by the accused, the court may not require a defendant to "stand alone against the State." *United States v. Smith, supra* at 736, *quoting United States v. Wade*, 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1969).

■ We are of the opinion, however, that this infringement of appellant's right to counsel is subject to the "harmless error" rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Cf. Coleman v. Alabama*, 399 U.S. 1, 10–11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Gilbert v. California*, 388 U.S. 263, 272–74, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967);[4] *Hockaday v. United States, supra* at 150. *See also United States v. Crowley*, 529 F.2d 1066, 1069–71 (3rd Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976). In the instant case, the government has sustained its burden of proving harmless a constitutional error. That is, we are able to conclude beyond a reasonable doubt that the judgment of guilty accurately reflects the verdict of the jury and that the absence of counsel did not contribute to the judgment of conviction entered against appellant in this prosecution.

Our conclusion is based on two considerations. First, the record reveals there was

no irregularity in the actual rendition of the verdict and the subsequent polling of the jury by the trial judge: the jury, after returning from its deliberations, answered affirmatively the court's two questions "Have you reached a verdict?" and "Have you selected a foreperson?" Then, the foreman handed to the clerk the verdict forms, marked and signed, which he read in open court; and, finally, the court polled the jury, and each juror answered without hesitation or ambiguity that his or her verdict was guilty. Thus, it appears from the transcript that the absence of counsel was of no moment in this case.

We recognize, however, that we cannot rest our finding of harmless error solely on our examination of the transcript of the proceeding and our conclusion that no overt confusion by the jury is reflected there. As the court pointed out in *United States v. Smith, supra* at 736–37:

From a reading of the record it is impossible to determine the tone of voice of the jurors when they individually announced their decision, the hesitancy of their responses, and other possibilities that could have taken place and had significant meaning. Had counsel been present *and something of this nature occurred*, the defendant would have had the benefit of his legal advice. We must presume that the defendant himself was ignorant of the legal significance of any such incident, and, without the aid of counsel, it would have passed unnoticed. [Emphasis added.]

We think it highly unlikely, however, that anything "of this nature" could have occurred here. The evidence of guilt was overwhelming: appellant was caught holding a cash box inside a grocery store which had been broken into.[5] Furthermore, the

---

4. Our reading of the various opinions in *Gilbert* is that all the Justices who believed there had been a violation of the defendant's right to counsel concurred in remanding the case to determine if the error was harmless under *Chapman*.

5. Examination of closing arguments indicates that appellant's defense was that he did not

actually enter the store, but was caught as he was attempting to enter. Appellant did not take the stand in his defense but attempted to impeach with prior inconsistent statements the testimony of one of the arresting officers that appellant was seen inside the store and had been arrested coming out.

case presented the jury with the single, uncomplicated charge of burglary in the second degree. The foreman was only required to sign the guilty verdict form or the not-guilty verdict form and bring the forms back into the courtroom. Thus there was a single defendant, a single charge, no lesser-included offenses, and a straightforward issue of fact for the jury to determine.[6] Under the circumstances, we conclude there was little likelihood that a situation requiring the assistance of counsel would develop.[7]

We also find to be without merit appellant's assertion that the trial judge's unexpected and unexplained omission of an instruction he had agreed to give the jury constitutes reversible error, even though the defense counsel failed to call the court's attention to its omission at the end of the charge. Appellant explains his failure to comply with Super.Ct.Cr.R. 30[8] by saying that for defense counsel to have called the court's attention to the omission at the conclusion of the charge was "to risk the dan-

ger of drawing further attention to the fact that he [appellant] had not testified by being forced to request that the instruction be given alone and out of order." (Reply Brief at 5.)

We are not persuaded, however, that had the instruction been given at the end of the charge before the jury retired to deliberate it would have intolerably emphasized the defendant's silence during the trial.[9] Hence, the failure to comply with Rule 30 was not excusable and we will not consider appellant's claim that the court erred in failing to give the requested instruction.

In sum, we conclude after careful review of the record that the trial, while not perfect, was fair.

*Affirmed.*

---

6. *Contrast with Kendall v. United States,* D.C. App., 349 A.2d 464 (1975).

7. This contention is supported by the fact that appellant's trial counsel did not object to the court's procedure upon his return to the courtroom.

8. Super.Ct.Cr.R. 30 provides in pertinent part that "[n]o party may assign as error any portion of the charge or omission therefrom unless

he objects thereto before the jury retires to consider its verdict . . . ."

9. Indeed, defense counsel himself had pointed out to the jury earlier that appellant "does not have to testify; does not have to take the stand," and the court in its charge had instructed the jury "[t]he law does not require a defendant to prove his innocence or produce any evidence."